1  Kent R. Robison, Esq., NSB No. 1167          **ELECTRONICALLY FILED ON 10/29/12**
   krobison@rbsllaw.com
2  Kristen L. Martini, Esq., NSB No. 11272
   kmartini@rbsllaw.com
3  ROBISON, BELAUSTEGUI, SHARP & LOW
4  71 Washington Street
   Reno, Nevada 89503
5  Telephone:   (775) 329-3151
   Facsimile:   (775) 329-7169
6
7  James J. Pisanelli, Esq., NSB No. 4027
   jjp@pisanellibice.com
8  M. Magali Wysong, Esq., NSB No. 11742
   mmw@pisanellibice.com
9  PISANELLI BICE, PLLC
   3883 Howard Hughes Parkway, Suite 800
10 Las Vegas, Nevada 89169
11 Telephone:   (702) 214-2100
   Facsimile:   (702) 214-2101
12 Attorneys for Defendants

13              **UNITED STATES DISTRICT COURT**

14                 **DISTRICT OF NEVADA**

15                    * * * * * *

16 BRADLEY J. MAMER, and DOES I-X          **Case No.: 3:12-cv-00381-LRH-VPC**
   inclusive,
17
18              Plaintiff,              **MOTION TO DISMISS SECOND**
                                        **AMENDED COMPLAINT (DOC. # 5)**
19 vs.                                  **OR, IN THE ALTERNATIVE, STAY**
                                        **PROCEEDINGS**
20 ALBERT D. SEENO, JR., an individual;
21 THOMAS A. SEENO, an individual; ALBERT
   D. SEENO, III, and individual; MICHAEL P.
22 GHIORSO, an individual; KEVIN P.
   MCCAULEY, an individual; EMILIA K.
23 CARGILL, an individual; DOES I-X,
   inclusive; and WINGFIELD NEVADA
24 GROUP HOLDING COMPANY, LLC, a
25 Nevada company; WINGFIELD NEVADA
   GROUP MANAGEMENT COMPANY, LLC,
26 a Nevada company; and ROE
   CORPORATIONS XI through XX,
27
28              Defendants.
   _____/

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

## MOTION TO DISMISS SECOND AMENDED COMPLAINT (DOC. # 5) OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

Defendants Albert D. Seeno, Jr., Thomas A. Seeno, Albert D. Seeno, III, Michael P. Ghiorso, Kevin P. McCauley, Emilia K. Cargill, and Wingfield Nevada Group Management Company, LLC ("WNG Management Company"), move this Honorable Court for an order dismissing Plaintiff Bradley J. Mamer's ("Mamer") Second Amended Complaint (Doc. # 5) or, in the alternative, staying this action while the companion and related state court action is adjudicated, pursuant to the federal abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). This motion is based on the following Memorandum of Points and Authorities, the attached exhibits properly subject to judicial notice, and the pleadings and papers on file herein.

DATED this 29th day of October, 2012.

ROBISON, BELAUSTEGUI, SHARP & LOW
A Professional Corporation
71 Washington Street
Reno, Nevada 89503

By: _____
KENT R. ROBISON
KRISTEN L. MARTINI
Attorneys for Defendants

IN ASSOCIATION WITH:
JAMES J. PISANELLI  - NSB No. 4027
M. MAGALI WYSONG - NSB No. 11742
PISANELLI BICE, PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

To assist this Court with its understanding of the sequence, nature, and scope of the various, interrelated lawsuits that have been filed that concern this action, the following list describes the filing events that have occurred in this and the two related lawsuits, in

chronological order:

1.      On January 27, 2012, Wingfield Nevada Group Holding Company ("WNG") filed a lawsuit against Harvey Whittemore ("Whittemore") Annette Whittemore, and The Lakeshore House Limited Partnership (collectively the "Whittemore Defendants") in the state court located in Clark County, Nevada, *Wingfield Nevada Group Holding Co., et al. v. Whittemore, et al.*, Case No. A-12-655426-B, alleging that the Whittemore Defendants embezzled and misappropriated assets and money from WNG. *See* **Exhibit 1**.[1] This Clark County lawsuit is referred to herein as the "state court action."

2.      On February 1, 2012, in retaliation to WNG's state court action, the Whittemores filed a lawsuit in this federal Court against WNG managers Thomas Seeno and Albert Seeno, Jr., and Albert Seeno, Jr.'s son, Albert Seeno, III (collectively, the "Seenos"), *Whittemore, et al. v. Seeno, et al.*, Case No. 3:12-cv-00063-LRH-WGC. *See* **Exhibit 2**. The Whittemores strategically failed to name WNG in their federal court action and accused the Seenos of having made purported threats of violence related to Whittemore's involvement with WNG. This lawsuit is referred to herein as the "Whittemores' federal court action."

3.      On February 9, 2012, in the state court action, WNG filed an amended complaint naming Bradley J. Mamer (Plaintiff in the instant federal court action) as a defendant in light of newly discovered evidence. WNG alleged that Mamer conspired with the Whittemores to harm WNG misappropriated trade secrets, and breached contracts and implied duties of good faith arising out of Mamer's employment with WNG. WNG's First Amended Complaint filed in the state court action is attached hereto as **Exhibit 3**.

4.      On February 10, 2012, in the Whittemores' federal court action, the Seenos filed a Motion to Dismiss or, in the Alternative, Stay Proceedings, in which the Seenos argued that the Whittemores' claims should have been asserted in the state court action. The Seenos alleged that the Whittemores' federal court action was duplicative and fell within the scope of the state court

---

[1]      This Exhibit and the remaining attached Exhibits are properly subject to judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (holding that judicial notice of court filings and other matters of public record is proper).

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

action despite the Whittemores' deliberate failure to name WNG as a defendant, and that a dismissal or stay was warranted in accordance with federal abstention doctrines, including the *Colorado River* doctrine.

5.    On April 27, 2012, in the state court action, the Whittemores filed their Answer and Counterclaim wherein the Whittemores made allegations and claims against WNG that were identical to those alleged in their federal court action against the Seenos, which further confirmed the arguments made in the Seenos' Motion to Dismiss or, In the Alternative, Stay Proceedings.

6.    On May 11, 2012, in the state court action, Mamer followed the Whittemores' lead and he too filed counterclaims against WNG with his Answer. *See* **Exhibit 4**.  Nowhere in Mamer's Affirmative Defenses did Mamer challenge WNG's standing to sue Mamer based upon his employment relationship (or lack thereof) with Mamer. *See id.* at 12-13.  Rather, in his counterclaims, Mamer conceded this point and alleged claims for constructive discharge and intentional infliction of emotional distress–all based upon allegations of hostile working conditions, including threats of violence, during his employ with WNG. *See id.* at 13-15.

7.    Shortly thereafter, in the state court action, Mamer moved to compel arbitration of WNG's claims against him (*see* **Exhibit 5**) and his counterclaims (*see* **Exhibit 6**) pursuant to the arbitration provision in Mamer's contract with WNG, referred to by Mamer and entitled, "Wingfield Nevada Group Employee Handbook (Updated February 1, 2011)."  Mamer argued that the WNG Employee Handbook "effective February 1, 2011 . . . binds both WNG and Defendant Mamer" and that the Handbook's arbitration provision governed these claims, thus mandating arbitration. *See* **Exhibits 5, 6, 7**.  The state court agreed in part and ordered three of WNG's four claims to arbitration and one of Mamer's two counterclaims to arbitration. *See* **Exhibits 8, 9**.

8.    On July 11, 2012, this time following the Whittemores' retaliatory federal court filing, Mamer filed the instant action pending before this Court, and on August 11, 2012, filed his First Amended Complaint. *See* Doc. ## 1, 2.  In his First Amended Complaint, Mamer made allegations against WNG and WNG employees and an affiliate entity that are duplicative of those made in his state court counterclaim against WNG.  All of Mamer's allegations were based upon

and stem from his employ with WNG and the purported hostile working conditions that included alleged threats of violence. *See generally* Doc. # 2.

9.     On August 15, 2012, in the Whittemores' federal court action, this Court heard arguments on the Seenos' Motion to Dismiss or, in the Alternative, Stay Proceedings. This Court granted the Seenos' motion and stayed the Whittemores' federal court action pending resolution of the state court action pursuant to the *Colorado River* doctrine and based upon the duplicative nature of the Whittemores' federal court action. *See* **Exhibit 10**.

10.     A mere four days after this Court's ruling in the Whittemores' federal court action, on August 19, 2012, in the state court action, Mamer voluntarily dismissed his identical state court counterclaims. *See* **Exhibit 11**. His withdrawal was a clear effort to avoid a ruling in this federal Court action identical to the ruling in the Whittemores' federal court action.

11.     Nonetheless, on September 6, 2012, in the instant action, Defendants filed their Motion to Dismiss or, In the Alternative, Stay Proceedings (Doc. # 4), wherein Defendants argued that due to the duplicative nature of the instant action and the state court action, and Mamer's forum shopping, dismissal or a stay of the instant federal proceedings was warranted pursuant to the *Colorado River* doctrine.

12.     On September 9, 2012, in this federal court action, three days after Mamer was served with Defendants' Motion to Dismiss or, In the Alternative Stay Proceedings (Doc. # 4), Mamer filed his Second Amended Complaint (Doc. # 5), wherein Mamer removed WNG as a named defendant and limited all references to his employer to WNG Management Company instead of WNG. *See generally id.*

13.     On September 11, 2012, in the Whittemores' federal court action, this Court issued its written decision memorializing its granting of the Seenos' motion to stay the Whittemores' federal proceeding pending resolution of the state court action. *See* **Exhibit 12**.

## II.     **OVERVIEW**

The sequence of events that have occurred in this action, the Whittemores' federal court action, and the state court action reveal that a clearer case of forum shopping cannot be found. Mamer filed this action in a desperate attempt to retaliate against Defendants because WNG and

other stated-court plaintiff entities first filed a complaint against Mamer in the state court action.

In an attempt to forum shop and sensationalize, Mamer filed this inflammatory and salacious lawsuit. Importantly, however, Mamer had already made duplicative claims in his state court Counterclaim. *See* **Exhibit 4**. Mamer's state court counterclaims were based upon the very same facts and circumstances alleged in this action. *See id.* Mamer voluntarily withdrew his counterclaims in the state court action only four days after this federal Court stayed the Whittemores' federal court action pending resolution of the state court action. *See* **Exhibit 11**. Mamer's voluntary dismissal of his identical state court counterclaims against WNG was without question an attempt to avoid a similar motion by Defendants and an identical ruling by this Court in this action.

However, this lawsuit comes well after–yet clearly in support of–the Whittemores' filing of their equally sensationalized federal court complaint. *See* **Exhibit 2**. The Whittemores, too, filed their federal court action in a desperate attempt to forum shop and avoid litigating their duplicative claims in the same state court action. Unsurprisingly, however, this Court rejected the Whittemores' efforts. *See* **Exhibits 10**, **12**. On August 15, 2012, this Court stayed the Whittemores' federal action pending resolution of the state court action. *See id.* This Court's decision was based upon the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See generally* **Exhibits 11**, **13**. This Court found that the state court action was identical to the Whittemores' federal action and that exceptional circumstances existed for abstention. *Id.*

As stated above, only four days after this Court granted the Seenos' Motion to Dismiss or, In the Alternative, Stay Proceedings in the Whittemores' federal court action and in anticipation of the instant motion made by Defendants, Mamer voluntarily dismissed his pending state court counterclaims. *See* **Exhibit 11**. In fact, Mamer has duplicated nearly every action taken by the Whittemores in the state court action. But, now Mamer attempts to avoid the Whittemores' strategic failures. Mamer's efforts to forum shop and sensationalize are obvious.

After this Court's ruling in the Whittemores' federal court action, Mamer recognized the unequivocal fact that all of his allegations have already been alleged in the state court action and

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

6

that this Court's ruling in the Whittemores' federal court action was indicative of the future of his duplicative federal action. Realizing that his initial superficial attempt to distinguish the two actions by merely naming the Seenos' affiliated entity and employees in this action was insufficient, Mamer–in a last-ditch effort to avoid litigating these claims in the state court action– voluntarily withdrew his state court counterclaims. *See id.* Still yet, however, Mamer again realized that his state court dismissal was not enough.

Only after reviewing Defendants' Motion to Dismiss or, In the Alternative, Stay Proceedings (Doc. # 4) did Mamer realize that the state court action and the instant action were still identical. All of the allegations and claims alleged in his First Amended Complaint stem from, concern, arise out of, and involve his employment with WNG and purported hostile working conditions. Consequently, Mamer again took to additional procedural tactics in an attempt to misalign the parties in the two lawsuits. Accordingly, on September 9, 2012, Mamer filed his Second Amended Complaint wherein he removed WNG as a named defendant and changed all references to his employment with "WNG" to now only refer to his employment with WNG Management Company. *See Doc. # 5.*

But, Mamer's tardy attempts to distinguish the cases and the over-reaching, inflammatory hyperbole set forth in his Second Amended Complaint confirm the obvious: this action is nothing new when compared to the baseless allegations that Mamer already alleged as compulsory counterclaims against WNG in the state court action. For the reasons further discussed below, a dismissal or a stay of this action is warranted. Mamer should be compelled to litigate these claims as mandatory counterclaims in the existing state court action filed months before Mamer filed his spurious, inflammatory complaint in this action.

## II.   SIMILARITIES OF THE ISSUES RAISED IN THE ACTIONS

At the outset, Mamer's Second Amended Complaint must be stripped of the scandalous, inflammatory, and otherwise libelous accusations that are entirely unrelated to and have no bearing on Mamer's claims.[2] Regardless, even with the redundant, immaterial and scandalous

---

[2]    If this matter proceeds, Defendants intend to move to strike from Mamer's pleading all

Robison, Belaustegui, Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

minutia, it is clear that Mamer's complaint solely arises from and concerns his employment with WNG, despite his attempt to argue that his employment was only with WNG's affiliate, WNG Management Company.  Like the instant action, Mamer's previously alleged counterclaims in the state court action arose from and concerned his employment with WNG.  Despite Mamer's attempted manipulations, the facts, circumstances, and legal issues in the two actions are the same–if not identical.

### A.   MAMER'S CLAIMS AND ALLEGATIONS CONCERN WNG.

Although Mamer's Second Amended Complaint now only alleges claims against WNG Management Company and not WNG, and Mamer has edited his previous complaint to limit his allegations to his employment only with WNG Management Company, Mamer's changes are inconsequential and insufficient to misalign the parties.  As an initial matter, the section of the Employment Handbook upon which Mamer's claims are based defines "the Company" as "Wingfield Nevada Group and its affiliated companies."  *See* **Exhibit 13**; Doc. # 5 ¶¶ 59, 152, 156, 184-86.  Aside from the plain language of the Handbook, Mamer is judicially estopped from arguing that he was not employed by WNG.  The doctrine of issue preclusion bars such an argument as well.

Judicial estoppel applies to bar a party from taking a position when:

> (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (*i.e.*, the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

*Marcuse v. Del Webb Cmtys., Inc.*, 123 Nev. 278, 287, 163 P.3d 462, 468-69 (2007) (internal quotations omitted).  Mamer is judicially estopped from disputing his employment with WNG.

First, in the state court action, Mamer moved to compel to arbitration WNG's claims against him and Mamer's counterclaims against WNG based upon the position that he was an employee of WNG and the arbitration provision in his Employment Handbook governed the redundant, immaterial, impertinent, and scandalous matters.  *See* Fed. R. Civ. P. 12(f).

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

disputes.  *See* **Exhibits 5-7**.  Second, it cannot be disputed that Mamer took this position in a judicial proceeding.  Third, Mamer was successful in asserting his employment relationship with WNG because the state court ordered three of WNG's four claims to arbitration and one of Mamer's two claims to arbitration.  *See* **Exhibits 8, 9**.  Fourth, the two positions would be totally inconsistent.  And, fifth, Mamer's position was not taken as a result of ignorance, fraud, or mistake, because it was, in fact, correct.  Mamer cannot now dispute his employment relationship with WNG, and his strategic decision to remove WNG from this case evidences his improper motives.

The doctrine of issue preclusion similarly bars any argument from Mamer that WNG was not his employer.  Issue preclusion applies when: (1) the issue decided in the prior litigation is identical to the issue presented in the current action, (2) the initial ruling is on the merits and has become final, (3) the party against whom the judgment is asserted was a party or in privity in the prior litigation, and (4) the issue was actually and necessarily litigated.  *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008).  The doctrine of issue preclusion bars Mamer from disputing his employment relationship with WNG.

The issue concerning Mamer's employment relationship with WNG was presented in the state court action when Mamer sought to compel the claims asserted by and against WNG to arbitration.  Additionally, the state court's ruling concerning the arbitrability of those claims has become final.  *See Thomas v. City of N. Las Vegas*, 122 Nev. 82, 90 n.5, 127 P.3d 1057, 1063 (2006) (""[T]he order compelling arbitration was a final judgment in the matter . . . "); NRS 38.247(1)(a) ("An appeal may be taken from: . . . [a]n order denying a motion to compel arbitration."); Nev. R. Civ. P. 54(a) (defining "Judgment" to include "a decree and any order from which an appeal lies").  Further, Mamer is a party to the state court action.  And, finally, the issue was raised by motion and was actually and necessarily litigated.  Mamer cannot deny that he was employed by WNG.

Mamer's attempt to distance himself from WNG in this action in order to misalign the parties in his Second Amended Complaint is futile.  Mamer's Second Amended Complaint does everything but name WNG.  Mamer's Second Amended Complaint still arises out of and

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

concerns his employment relationship with WNG and is duplicative of the all-inclusive state court action. His claims in this action are mandatory counterclaims in the state court action.

## B.   THE FACTS AND CIRCUMSTANCES PREVIOUSLY ALLEGED IN THE STATE COURT ACTION.

WNG filed its First Amended Complaint in the state court action on February 9, 2012. *See* **Exhibit 3**. In the state court action, WNG named Harvey Whittemore, Annette Whittemore, The Lakeshore House Limited Partnership (of which the Whittemores are the general partners), and Mamer as defendants. *See id.* On May 11, 2012, Mamer filed his Answer and Counterclaim to WNG's First Amended Complaint. *See* **Exhibit 4**. In the state court action, WNG's allegations in its First Amended Complaint and Mamer's allegations in his strategically-dismissed counterclaim concern the following:

1.     The historical ownership structure of WNG and Whittemore's involvement as the managing member of WNG. *See* **Exhibit 3** at 3-5.

2.     Whittemore's misuse, misappropriation, and embezzlement of corporate assets and funds. *Id.* at 5-29.

3.     Whittemore's dealings with and causing a WNG subsidiary, Coyote Springs Investment, LLC ("CSI"), to contract with Pardee Homes of Nevada ("Pardee"), whereby Whittemore made inappropriate agreements with these and other third parties to advance his own personal interests. *Id.* at 10-11.

4.     The terms governing Mamer's employment with WNG and the promises to which Mamer contractually bound himself as a result of that employment. *Id.* at 30.

5.     Mamer's improper contacts with Whittemore and continued communications and conspiracies with the Whittemores to harm WNG. *Id.*

6.     Mamer and the Whittemores' conspiracies to misappropriate millions of dollars of WNG assets and funds, and confidential proprietary information, without WNG's or the Seenos' authority or knowledge. *Id.* at 34, 43.

7.     Mamer's breaches of his contractual duties and the implied covenant of good faith and fair dealing arising out of his employment with WNG, including those contained in his WNG

Employee Handbook and the Confidentiality and Non-Disclosure Policy therein. *Id.* at 41-43.

8.    Mamer was a longtime employee of WNG and its predecessor-in-interest. **Exhibit 4 ¶ 4.**

9.    WNG allegedly created dangerous and harassing working conditions. These purported conditions were in violation of the Employee Handbook and allegedly included threats of violence against Mamer and coercion to relay the threat of violence to Whittemore. *Id.* ¶ 5.

10.    Albert Seeno, III, made a purported comment concerning what Mamer refers to as, "the Seeno Way." *Id.* ¶ 6.

11.    Albert Seeno, III, purportedly instructed Mamer to contact Whittemore and relay a threat. *Id.* ¶ 7.

12.    Mamer informed WNG's general counsel of the purported threats. *Id.* ¶ 8.

13.    WNG's Employee Handbook prohibited threats in the workplace or against any employee. *Id.* ¶ 9.

14.    WNG allegedly did not remedy the purported threatening working conditions. *Id.* ¶ 10.

15.    Mamer allegedly felt compelled to resign. *Id.*

16.    The purported threats of violence allegedly caused Mamer physical and emotional distress. *Id.* ¶ 14.

As discussed below, Mamer repeats in this action (often times nearly verbatim) the factual circumstances surrounding WNG's general allegations and Mamer's very own allegations previously alleged in his mandatory state court counterclaims.

**C.    THE FACTS AND CIRCUMSTANCES ALLEGED IN THE INSTANT ACTION.**

Mamer filed his First Amended Complaint in this action on August 11, 2012. *See* Doc. # 2. In that complaint, Mamer named as Defendants the following persons and entities: Thomas Seeno, Albert Seeno, Jr., Albert Seeno, III (previously referred to as, the "Seenos"); Michael Ghiorso, Kevin McCauley, and Emilia Cargill (collectively, "WNG employees"); WNG; and WNG Management Company. *See id.* at 1. Now, however, as discussed above, Mamer has strategically excluded WNG as a defendant from his Second Amended Complaint. *See* Doc. # 5.

Yet, for the reasons discussed above, *see supra* § II.A., this fact is inconsequential and does not change the fact that Mamer raises factual allegations, circumstances, and legal issues in this action that are identical to those that he already alleged in the state court action. *See generally* Doc. # 5.

The facts and circumstances alleged in this federal court action specifically include the following:

1.     The historical ownership structure of WNG and Whittemore's involvement as the managing member of WNG. *Id.* ¶¶ 13-19, 31, 33.

2.     Whittemore's misuse, misappropriation and embezzlement of corporate assets and funds. *Id.* ¶¶ 89, 90, 190-91, 46.

3.     Whittemore's dealings with and causing a WNG subsidiary, CSI, to contract with Pardee, whereby Whittemore made inappropriate agreements with these and other third parties to advance his own personal interests. *Id.* ¶¶ 20, 52, 69, 125, 202-05.

4.     Mamer's longtime status as an employee of WNG and its predecessor-in-interest. *Id.* ¶ 4.

5.     The Seenos, WNG, and WNG employees allegedly created dangerous and harassing working conditions. These conditions were in violation of the Employee Handbook and purportedly included threats of violence against Mamer and coercion to relay the threat of violence to Harvey Whittemore. *See* ¶¶ 63, 125, 132, 164-68, 74-79, 88, 117, 152-54, 173-74.

6.     Albert Seeno, III, made a purported comment concerning what Mamer refers to as, "the Seeno Way." *Id.* ¶¶ 53, 54, 94, 132, 141, 153.

7.     Albert Seeno, III, purportedly instructed Mamer to contact Harvey Whittemore and relay a threat. *Id.* ¶¶ 63, 125, 132, 133, 153, 154.

8.     Mamer informed WNG's general counsel of the purported threats. *Id.* ¶¶ 65, 94, 97, 119-20, 155, 183-86.

9.     WNG's Employee Handbook prohibited threats in the workplace or against any employee. *Id.* ¶¶ 59, 152, 156, 180-82.

10.     Defendants supposedly did not remedy the working conditions that Mamer alleges

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

were threatening. *Id.* ¶¶ 120, 155-57, 184-86.

11.     WNG, the Seenos, and WNG employees allegedly denied Mamer rights under his employment with WNG through threats and other purported illegal conduct. *See id.* ¶¶ 65, 73, 89-90, 94, 97, 118, 120, 164-68, 72, 74-79, 88, 117, 152-57, 173-74, 183-86, 196.

12.     Mamer allegedly felt compelled to resign. *Id.* ¶¶ 68, 99, 100, 104.

13.     The purported threats of violence allegedly caused Mamer physical and emotional distress. *Id.* ¶¶ 100, 122-24, 127, 155, 211-14.

14.     Mamer was forced to take a payroll deduction for amounts due to WNG for the repairs and remodeling of Mamer's personal residence purportedly agreed to between Whittemore and Mamer as part of his employee compensation, but not authorized or known by WNG or the Seenos. *Id.* ¶¶ 27, 48-51, 57-58.

15.     Mamer's Relocation Agreement purportedly agreed to between Whittemore and Mamer as part of his employment with WNG, but not authorized or known by WNG or the Seenos was not honored. *Id.* ¶¶ 26, 39, 61, 62, 70, 71, 147-52.

16.     "The Seeno Defendants sued Mamer in Nevada District Court alleging among other things civil conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealing, and misappropriation of trade secrets." *Id.* ¶ 105.

**D.      THE LEGAL ISSUES RAISED IN THE STATE COURT ACTION.**

The legal issues raised by WNG and Mamer in the state court action can be fairly summarized as follows:

1.     Concerning the ownership and operation of WNG, the Whittemores engaged in misappropriation, fraud, and conversion. *See* **Exhibit 3** at 3-37.

2.     Concerning the ownership and operation of WNG, Mamer and the Whittemores engaged in civil conspiracies to damage WNG and the Seenos' financial interests. *Id.* at 30, 34, 43.

3.     Concerning Mamer's employment contract with WNG, as set forth in the WNG Employee Handbook, Mamer breached the contract. *Id.* at 41-42.

4.     Concerning his contracts with WNG, Mamer breached his implied covenants of

good faith and fair dealings. *Id.* at 30, 41-43.

5.     Concerning Mamer's employment with WNG, Mamer allegedly felt compelled to resign because of the purported hostile and harassing work environment and conditions. *See* **Exhibit 4** at 13-14.

6.     Concerning Mamer's employment with WNG, the alleged hostile and harassing work environment caused him physical and emotional distress. *Id.* at 14-15.

E.     **THE LEGAL ISSUES RAISED IN THE INSTANT ACTION.**

The legal issues raised by Mamer in this action consist of the following:

1.     Concerning Mamer's contract arising out of his employment with and his status as employee of WNG, and the Seenos' alleged threats to have Whittemore make restitution to reimburse WNG for the assets and money that the Whittemores embezzled, misappropriated, and diverted, Mamer has alleged RICO violations.  Doc. # 5 at 41-45, 51-52.

2.     Concerning Mamer's purported Relocation Agreement that he entered into with Whittemore as part of Mamer's employment with WNG and the purported hostile and harassing work environment, Mamer seeks declaratory relief. *Id.* at 45-46.

3.     Concerning Mamer's employment with WNG, Defendants purportedly violated his employee rights under the FMLA. *Id.* at 47-48.

4.     Concerning Mamer's employment with WNG, Defendants allegedly violated his employee rights under the FLSA. *Id.* at 48-49.

5.     Concerning Mamer's employment contract with WNG, as set forth in the WNG Employee Handbook, Defendants allegedly breached the contract. *Id.* at 49-51.

6.     Concerning Mamer's employment with WNG, the purported hostile and harassing work environment caused him physical emotional distress. *Id.* at 54.

7.     Concerning Mamer's shareholder interest in CSI that he received from Whittemore as part of his employee compensation with WNG, Defendants allegedly breached their fiduciary duties to Mamer as a result of the contracts entered into between Whittemore and Pardee, causing RICO violations. *Id.* at 53-54.

/ / /

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

**F.   SIMILARITIES BETWEEN THE FACTS, CIRCUMSTANCES, AND LEGAL ALLEGATIONS AT ISSUE IN THE STATE COURT ACTION AND THIS ACTION.**

A simple comparison of the facts, circumstances, and legal allegations that Mamer raised in the state court action and the instant action are telling:  Mamer's complaints herein are duplicative of those that he alleged in the state court action.  Both actions concern alleged wrongs that are all derivative of his employment with WNG.

In the state court action filed by WNG and two of its subsidiaries, those plaintiffs are seeking damages against the Whittemore Defendants arising from Whittemore's control, operation, previous ownership, and abuse of WNG, and the Whittemores misappropriation of funds and assets of WNG.  Those plaintiffs are also seeking damages against Mamer for his conspiracies with the Whittemores and his violation of his contractual duties to WNG arising out of his employment with WNG.  Mamer asserted counterclaims against WNG, alleging various unlawful and hostile working conditions that caused him to resign and caused him physical and emotional harm.

In this action, Mamer has asserted claims against the Seenos, WNG's affiliate WNG Management Company, and WNG employees arising out of his employment with WNG.  These allegations include various unlawful and hostile working conditions that caused him to resign and caused him physical emotional harm.  While Mamer has since removed WNG as a named defendant herein in an attempt to misalign the parties, his attempts are disingenuous and futile.  *See* discussion *supra* § II.A.  Mamer has done everything but name WNG in his Second Amended Complaint.

In this action, Mamer also seeks recourse under various contracts that he allegedly negotiated with Whittemore.  These contracts included those negotiated with Whittemore without the consent or knowledge of the Seenos or WNG.  These claims directly relate to WNG's claims in the state court action that Whittemore engaged in fraud, misrepresentation, and conversion and that Mamer conspired with the Whittemores to deprive WNG of assets and funds.

Both lawsuits have common facts and legal claims.  Mamer's improper efforts to forum shop only after an unfavorable ruling in the Whittemores' comparable federal court action does

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

not change the fact that all of the allegations and claims stem from and concern Whittemore's and Mamer's conspiratorial and inappropriate use and abuse of WNG assets and funds, and Mamer's employment with WNG. And even Mamer's accusations that the Seenos and WNG employees were allegedly involved in RICO, FMLA, and FLSA violations concern and pertain to the same facts and circumstances that he had previously alleged as mandatory counterclaims in the state court action, *i.e.*, Mamer's complaints of various threats and unlawful activity arising out of his employment with WNG. All of the issues involve the same common nucleus of operative facts: Mamer's employment with WNG and Defendants' alleged actions to deprive him of various rights, while causing him harm. Alleging minutia that amounts to nothing more than sensationalized hyperbole, and which is entirely unrelated and irrelevant, does nothing to distinguish the parallel alignment of the two lawsuits.

These two actions were identical before Mamer's strategic dismissal of his state court counterclaims and removal of WNG as a named defendant in this case and, despite Mamer's attempted manipulations, remain substantially similar. Yet, Mamer stubbornly ignores the fact that WNG's claims against him concern his employment with WNG and his conspiratorial activities with the Whittemores to harm WNG. Regardless of Mamer's manipulations under the rules of procedure, Mamer's claims are still mandatory counterclaims to the state court action.

### G.  THIS COURT'S RULING IN THE *WHITTEMORE V. SEENO* FEDERAL COURT ACTION IS SIGNIFICANT HERE.

The Whittemores preceded Mamer in the filing of their duplicative and scandalous federal action. *See* **Exhibit 2**. And, the Whittemores were precluded from proceeding with their attempt to create vexatious and uneconomical litigation. On August 15, 2012, this Court stayed the Whittemores' federal action pending resolution of the state court action. This Court concluded that comprehensive disposition of litigation and conservation of judicial resources dictated a stay of the Whittemores' federal court action under the *Colorado River* abstention doctrine. *See* **Exhibits 10**, **12**.

In making this determination, this Court gave careful consideration to its recent decision in *In re Ormat Technologies, Inc.*, 2011 WL 3841089 (D. Nev., Aug. 29, 2011), and based its

decision primarily upon the recent Ninth Circuit case, *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966 (9th Cir. 2011).  This Court found that the state court action and the Whittemores' federal court action presented the rare circumstance that warranted abstention under the *Colorado River* doctrine.  The Court found that the state court action involved the very same matters as those at issue in the Whittemores' federal court action.

Noting that exact parallelism of the two actions is not required, this Court found that the matters involved substantially the same parties—despite the Whittemores' failure to name WNG as a defendant—and substantially the same issues.  The state court action amounted to "massive litigation" concerning partnership disputes between the Seenos and the Whittemores in WNG. The state court action included within it the same common issues necessary for this Court to make its determination in the federal court case.  The factors for consideration under the *Colorado River* doctrine were therefore satisfied.

Specifically, this Court found that:

(1)     the state court action in Clark County was the more convenient forum;

(2)     piecemeal litigation would certainly result without abstention because both courts would be required to consider the same issues–most significant, the same damage claims upon which the Whittemores' RICO claims were based–thus increasing the danger of inconsistent rulings and the expenditure of the federal court's already strained judicial resources;

(3)     the state court action was filed first and has made significant progress, including the state court's order compelling various claims and counterclaims to arbitration;

(4)     all of the federal court claims alleged were allowable in the state court action and the Whittemores could file their federal court claims as counterclaims in the state court action under NRCP 13(h), which is the best mechanism for dispute resolution under the rules of civil procedure; and

(5)     the state court has concurrent jurisdiction over the federal law claims and, therefore, the state court action provided complete and adequate protection of the Whittemores' rights.[3]

---

[3]     Because the six factors were satisfied, this Court found it unnecessary to make a

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

As a result of these findings, this Court concluded that a stay of the Whittemores' federal court action pending resolution of the state court action was warranted. This Court summarized that the facts, circumstances, and legal claims at issue in the two actions are the same or overlap to such an extent that the piecemeal litigation factor is entirely overwhelming. Due to the size of the state court action, the state court will be required to monitor the progress of the case and a duplication of those efforts in the federal court action would create an unnecessary hardship on the federal court's limited judicial resources. This Court held that the Whittemores' federal court action was the exact type of case that was contemplated by the *Colorado River* doctrine as being exceptional.

The instant case is no different. A simple comparison of the Whittemores' federal court complaint with Mamer's Second Amended Complaint filed in this action reveal their similarities. *Compare* **Exhibit 2** *with* Doc. # 5.

Yet, four days after this Court granted the Seenos' Motion to Dismiss or, In the Alternative, Stay Proceedings in the Whittemores' federal court action, Mamer attempted to frustrate the inevitable imposition of a stay in a desperate attempt to preclude the same ruling in this case. On August 19, 2012, Mamer filed his Notice of Dismissal whereby Mamer voluntarily dismissed his counterclaims in the state court action. *See* **Exhibit 11**. Then, after being confronted with Defendants' Motion to Dismiss or, In the Alternative, Stay Proceedings (Doc. # 4) in this case, Mamer again attempted to preclude a ruling similar to that in the Whittemores' federal court action by filing his Second Amended Complaint removing WNG as a named defendant. *See* Doc. # 5. Mamer's dismissal and attempt to misalign the parties are obvious strategic efforts to forum shop and avoid litigating his claims in the state court action.

## III.   LAW AND ANALYSIS

### A.   MAMER'S SECOND AMENDED COMPLAINT AND THE ALLEGATIONS THEREIN ARE MANDATORY COUNTERCLAIMS IN THE STATE COURT ACTION.

As illustrated above, the facts, circumstances, events, and transactions addressed in the

determination of whether the Whittemores engaged in forum shopping. *See* **Exhibit 10**.

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

state court action are the same as, similar to, or identical to the relevant facts, circumstances, events, and transactions addressed in Mamer's Second Amended Complaint filed in this case. The legal allegations overlap.

Mamer is obligated to file the claims that he has made in this case as compulsory counterclaims in the state court action just as he already acknowledged by filing his mandatory counterclaims in response to WNG's First Amended Complaint, only to voluntarily withdraw them. NRCP 13(a) is dispositive. It reads:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Nev. R. Civ. P. 13(a).

Rule 13(a) is to be liberally construed because it was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962). Moreover, a subsequent action cannot be maintained when the claims asserted should have been brought as compulsory counterclaims in a previous action. *Springs v. First Nat'l Bank*, 835 F. 2d 1293, 1296 (9th Cir. 1998). A counterclaim is compulsory if there is any "logical relationship" between the claim and the counterclaim. *Id.*; *MacDonald v. Krause*, 362 P.2d 724, 729 (Nev. 1961).

All of Mamer's claims are compulsory counterclaims in the state court action. Mamer's previously-filed counterclaims in the state court action were factually and legally identical to his claims alleged in this action. *Compare* **Exhibit 4** *with* Doc. # 5. Each and every one of Mamer's claims stem from his employment relationship with WNG.

Mamer's federal law claims under RICO, FMLA, and FLSA, are also mandatory counterclaims. Because state and federal courts have concurrent jurisdiction over RICO, FMLA, and FLSA claims, Mamer must raise his federal claims in the state court action: these claims arise out of the same transactions and occurrences as those at issue in the state court action, that is, Mamer's employment with WNG. *See Tafflin v. Levitt*, 493 U.S. 455, 467 (1993); *Lou v.*

*Belzberg*, 834 F.2d 730, 741 (9th Cir. 1987).

The state court action already has jurisdiction over WNG as a named party in that action. And while Albert Seeno, Jr., and Thomas Seeno are not individually named parties in the state court action, they are the two managers of the plaintiff entities in that action and seek to recover damages on behalf of the company. Even Mamer's own allegations allege that all of the Seenos are parties to the state court action. *See* Doc. # 5 ¶ 105 ("The Seeno Defendants [defined as "Albert Seeno, Jr., Tom Seeno, [and] Albert Seeno, III," ¶ 8] sued Mamer in Nevada District Court alleging among other things civil conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealing, and misappropriation of trade secrets."). Concerning Albert Seeno, III, Mamer's previously-filed counterclaim named him throughout although Mamer strategically failed to name Albert Seeno, III, as a defendant thereto. *See* **Exhibit 4** ¶¶ 5-14. Moreover, the remaining Defendants are employees of WNG, or an affiliate entity of WNG. *See generally* Doc. # 5. While the Seenos and these Defendants were not named in the state court action, this fact is inconsequential. *See* Nev. R. Civ. P. 13(a).

NRCP 13(a) contemplates this specific situation. NRCP 13(a) clearly provides that any claim arising out of the same transaction and occurrence (at the time of the service of the pleading) must be asserted as a counterclaim so long as the claim "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Rule 13(a) expressly recognizes the instance in which a compulsory counterclaim may concern third parties who are not, as of yet, under the court's jurisdiction. Rule 13 then offers a specific subsection to address that scenario. *See* Nev. R. Civ. P. 13(h); *Lund v. Dist. Ct.*, 255 P.3d 280, 283 (Nev. Adv. Op. No. 28, June 2, 2011).

NRCP 13(h), entitled "Joinder of Additional Parties," reads, "Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." NRCP 19 and 20 set forth the procedures for mandatory and permissive joinder of parties, respectively. *See Dutchess Bus. Servs. v. State, Bd. of Pharm.*, 191 P.3d 1159, 1165 (Nev. 2008). NRCP 19 requires joinder of all parties necessary for an action's just adjudication. Nev. R. Civ. P. 19(a)(1)-(2). NRCP 20(a) authorizes

permissive joinder of a defendant against whom a right to relief is asserted "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or of fact common to all these persons will arise in the action." The individual Defendants and WNG Management Company can be made parties to the state court action in accordance with Rules 19 and 20 and as prescribed by NRCP 13(h). *See Lund*, 255 P.3d at 283. Mamer's claims are compulsory counterclaims and must be alleged in the state court action just as he previously attempted to do.

### B.   THIS COURT HAS AUTHORITY TO DISMISS OR STAY.

Despite the general principle that federal courts have an obligation to exercise the jurisdiction given them, exceptions exist. One such exception is the *Colorado River* doctrine. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). No different than its applicability to the Whittemores' federal court action, this doctrine is applicable to this case. A dismissal or a stay of these proceedings is proper. Mamer should be required to prosecute his claims as counterclaims in the state court action.

The court, in its discretion, may decline to exercise its jurisdiction based upon considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation under the *Colorado River* doctrine. *See id.* Likewise, a dismissal or stay under this doctrine may be appropriate when duplicative litigation in state courts creates a risk of tension in state and federal courts. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 663 (1978).

A dismissal or stay should occur when exercising federal jurisdiction would result in uneconomical or vexatious litigation. *Brillhart v. Excess Ins. Co.*, 361 U.S. 491, 495 (1942). Although duplicative litigation is sometimes allowed, the *Colorado River* doctrine prevents piecemeal litigation and the concomitant danger of inconsistent rulings. *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006). The essence of this doctrine concerns the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority.

Six basic factors are involved in the *Colorado River* doctrine analysis. *E.g.*, *Stewart*, 438 F.3d at 491; *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002). First is the assumption by

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

either the state or federal courts of the res. *Id.* Second is the relative inconvenience of the fora. *Id.* Third is the consideration and desirability of avoiding piecemeal litigation *Id.* Fourth is the order in which the respective courts obtained jurisdiction. *Id.* Fifth is whether state law or federal law provides the rule for decisions on the merits. *Id.* Finally, the court should consider the adequacy of the state court proceeding in protecting the parties' rights. The Ninth Circuit has also considered whether the federal action was the result of forum shopping. *E.g., Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989); 17A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Juris.* § 4247 (3d ed. 2011 Update). Discussed below, these factors heavily favor a dismissal or a stay of this action. Exceptional circumstances exist to warrant abstention.

### 1.     Jurisdiction Over the Res is Inapplicable.

It cannot be reasonably disputed that the first factor, jurisdiction over the res, is inapplicable in this case. Both cases concern contract and tort claims from which money damages are sought. "[M]oney . . . is not the sort of tangible physical property referred to in Colorado River." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) (quotations and citation omitted).

### 2.     Clark County is the More Convenient Forum.

The second factor, convenience of the forums, supports the issuance of a stay. The state court action is the more convenient forum. Mamer, himself, is a resident of Clark County. Doc. # 5 ¶ 4. The named individual defendants worked in Nevada during the pertinent time period alleged in Mamer's Second Amended Complaint. *See generally* Doc. # 5. Mamer's action involves and names as Nevada companies as defendants . *See id.* The contracts entered into and which are, in part, the subjects of Mamer's action were entered into in the State of Nevada. *See generally id.* Further, the actions complained of by Mamer in this case all occurred in Clark County, during his employment in Clark County. *See generally id.* A stay is warranted. Mamer should be required to prosecute the claims in the Clark County, state court action.

/ / /

/ / /

3.   **Piecemeal Litigation Will Certainly Result Absent a Stay.**

The third factor, the consideration and desirability of avoiding piecemeal litigation, highly favors a stay.  In the case *Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989), the Ninth Circuit held that despite that each action alleged wrongdoing on the other party's part, the proceedings were in fact parallel.  Even more persuasive than the facts in *Nakash*, Mamer has focused on the purported wrongdoing of WNG and the Seenos in both this case and in his previously-filed counterclaim in the state court action.  Both actions concern Defendants' purported threatening and unlawful activity against Mamer during his employment with WNG. *Compare* **Exhibit 3** *with* Doc. # 5.  These proceedings are factually aligned, if not identical, and the issues overlap.

The facts that Mamer decided to strategically name employees of WNG and a WNG affiliated entity, remove WNG as a defendant from this case, and withdraw his state court counterclaims are inconsequential.  The proceedings are still parallel.  *See Nakash*, 882 F.2d at 1416-17.  WNG's claims against Mamer in the state court action arise out of and concern Mamer's employment with WNG and his improper conspiracies with the Whittemores.  Mamer's instant lawsuit stems from and concerns his employment with WNG and concerns Whittemore. Mamer's claims are mandatory counterclaims to the state court action.  Mamer's obvious attempts to manipulate the procedural rules to avoid litigating his claims in the state court action should not be condoned.

4.   **The State Court Action Obtained Jurisdiction First and has Substantially Progressed.**

The fourth factor, the order in which the respective courts obtained jurisdiction is also significant and favors a stay.  The order in which jurisdiction of the two actions was obtained is not "'measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'"  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).  The Seenos filed WNG's First Amended Complaint in the state court action on February 9, 2012.  *See* **Exhibit 3**.  Mamer filed his Counterclaim in that action on May 11, 2012.

*See* **Exhibit 4**. Mamer only recently filed his Second Amended Complaint on September 9, 2012. *See* Doc. # 5. Thus, the state court action, in all respects, was filed first.

Not only was the state court action the first filed action, but it has also progressed substantially farther than this action. More precisely, the state court action has already progressed past the Rule 12(b)-motion stage and the pleadings are closed. Additionally, the state court has heard and ruled on important motions concerning arbitration, discovery disputes, and disputes concerning the return of personal property and appointment of an independent accountant. The parties have entered into a Stipulated Protective Order, which has been accepted and approved by the state court.

Substantial discovery has also occurred in the state court action. The initial case conference has occurred. The state court has issued its scheduling order. Initial witness disclosures, initial document disclosures, privilege logs, and first through seventh supplements thereto have been exchanged by the parties, amounting the production of hundreds of thousands of pages of documents. Similarly, requests for production of documents and responses have been served.

At least nine depositions have already been noticed and confirmed. These depositions pertain to the following individuals: (1) Mamer; (2) Thomas Seeno; (3) Albert Seeno, Jr.; (4) Albert Seeno, III; (5) Larry Gunderson; (6) Kevin McCauley; (7) James England; (8) James Harris; and (9) Aaron Hardinger. Importantly, all of these persons are central to the allegations set forth in Mamer's Second Amended Complaint in this action. *See generally* Doc. # 5. Subpoenas Duces Tecum have been noticed for the following institutions, most of which have agreed to produce the requested documents without appearing: (1) Morgan Stanley & Co, LLC; (2) City National Bank; (3) Bank of the West; (4) Bank of America; (5) Nevada State Bank; (6) Merrill Lynch; (7) American Express; (8) Sunshine Reporting and Litigation Services, LLC; and (9) Whittemore Peterson Institute for Neuro-Immune Disease.

Finally, a trial date for the state court action has been set for May 20, 2013, and a settlement conference is scheduled to occur on December 20 and 21, 2012.

In summary, not only did the state court first obtain jurisdiction over the claims and

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

previously-filed counterclaims implicated in this case, but the state court action has progressed substantially to date. Most significant about the status of the state court action is that all of the progress made by the parties in that action will have to be duplicated here absent dismissal or a stay. This factor favors a stay.

### 5.      Mamer's Federal Law Claims are Permitted in State Court.

The fifth factor, whether state or federal law applies, favors a stay as well. Mentioned above and specifically addressed *infra* at § IIIC of this motion, the state court has concurrent jurisdiction over Mamer's federal claims alleged under the RICO, FMLA, and FLSA statutes. Naturally, state law applies to Mamer's contract and tort claims. This factor favors a stay.

### 6.      The State Court Proceedings are Adequate.

The sixth factor, the adequacy of the state court proceeding in protecting the parties' rights, also favors a stay. Again, the state court has jurisdiction over Mamer's federal and state claims. Moreover, the Nevada Rules of Civil Procedure permit and facilitate comprehensive dispute resolution, as provided for in NRCP 13(h) and as elaborated upon in *Lund v. Dist. Ct.*, 255 P.3d 280, 283 (Nev. Adv. Op. No. 28, June 2, 2011). Mamer can, and must, allege these claims as counterclaims in the state court action, even against the currently unnamed individuals and entity. Mamer's rights are adequately protected in the state court action. A stay is warranted and Mamer should be compelled to litigate these claims in the state court action.

### 7.      Mamer's Forum Shopping Activities Favor a Stay.

The final factor for consideration, whether the plaintiff is forum shopping, "weighs strongly in favor of abstention." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (emphasis added). A district court's application of the *Colorado River* doctrine has been affirmed on the ground that a federal plaintiff has engaged in forum shopping. *E.g.*, *id*; *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011).

The Ninth Circuit recently defined the meaning of "forum shopping" for purposes of the *Colorado River* analysis. *See R.R. Street & Co.*, 656 F.3d at 981. The Ninth Circuit explained that "forum shopping" refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." *Id*. The *R.R. Street & Co.* court continued on to explain

that, in order to avoid forum shopping, "'the <u>vexatious or reactive nature</u> of either the federal or state litigation may influence the decision whether to defer to parallel state litigation.'" *Id.* (citation omitted) (emphasis added).

Mamer should be bound to his initial choice of litigating these claims as mandatory counterclaims in the state court action. *See Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988) ("Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum.") (internal citations omitted). The facts and legal issues alleged in both cases are similar if not identical and pertain to the same events, agreements, companies, and individuals, or their employees.

Further, Mamer only now complains of actions that occurred as far back as 2009 and only as recent as over a year ago. Likewise, in this tardy fashion, Mamer's Second Amended Complaint comes five months after the filing of his counterclaims in the state court action and after the state court action has substantially progressed. This action was also filed only after the Whittemores filed their federal court action concerning the same and similar allegations. The vexatious and "reactive nature" of this suit evidences Mamer's attempts to forum shop.

Further, Mamer's reactive procedural machinations cannot be more obvious of his attempts to forum shop. When this Court stayed the Whittemores' federal court action based upon its duplicative nature and the Whittemores' pending counterclaims against WNG, Mamer voluntarily dismissed his identical state court counterclaims only to avoid a similar ruling in this case. *See* **Exhibit 11**. Then, when Defendants filed their Motion to Dismiss or, In the Alternative Stay Proceedings (Doc. # 4), Mamer again engaged in forum shopping efforts when he filed his Second Amended Complaint to remove WNG as a named defendant and attempt to misalign the parties. Mamer's removal of WNG as a defendant was solely an attempt by Mamer to once again avoid the instant motion and a decision by this Court staying or dismissing this action.

Mamer's strategic, voluntary dismissal of his state court counterclaims after this Court's ruling in the Whittemores' similar federal court action and tardy removal of WNG from this case after reviewing Defendants' initial motion illustrates Mamer's improper motives. "This factor

weighs strongly in favor of abstention." *See Nakash*, 882 F.2d at 1417 (emphasis added).

8.      **The Satisfaction of These Factors Evidence the Presence of Exceptional Circumstances Warranting Dismissal or a Stay.**

The state court action is far more comprehensive and is all inclusive of the claims and supporting factual and legal issues alleged by Mamer in this action. Due to the substantial similarities of the parties and issues, piecemeal litigation is certain. Mamer's claims in this case are mandatory counterclaims to the state court action, all over which the state court has jurisdiction and can afford the parties sufficient protection. Mamer's federal complaint, based on his employment with WNG, concerns the same matters at issue in the state court action, "and there is no reason to believe [that Mamer] cannot raise th[ese] theories in the pending original action. Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *See Telesco v. Telesco Fuel & Masons' Materials*, 765 F.2d 356, 363 (2d Cir. 1985) (cited by *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989)). Mamer's forum-shopping activities particularly weigh in favor of a dismissal or stay. *See Nakash*, 882 F.2d at 1417 (holding that a plaintiff's forum shopping "weighs strongly in favor of abstention").

Exceptional circumstances exist. Giving regard to the conservation of judicial resources and comprehensive disposition of litigation, and in wise judicial administration, a stay or dismissal under the *Colorado River* doctrine is warranted.

C.      **THE STATE COURT HAS JURISDICTION OVER ALL OF MAMER'S CLAIMS.**

In an effort to follow in the retaliatory footsteps of the Whittemores, defendants in the state court action and plaintiffs in their stayed federal court action, *Whittemore et al. v. Seeno et al.*, Case No. 3:12-cv-00063-LRH-WCG, Mamer is attempting to forum shop. Mamer's efforts are clear. His counterclaims previously filed in the state court action reveal that Mamer has simply realleged his state court counterclaims here in addition to his federal question claims. Mamer only elected to dismiss his counterclaims to avoid the instant motion and a ruling similar to that rendered in the Whittemores' federal court action on this same issue. However, not only does the state court have jurisdiction over Mamer's contract and tort claims, but Mamer's federal

question claims are also within the jurisdiction of the state court. Mamer should not be permitted to forum shop and avoid his obligation to litigate these facts and legal claims in a counterclaim in the state court action.

### 1.      The State Court has Jurisdiction Over Mamer's RICO Claims.

It is well settled that state and federal courts share concurrent jurisdiction over RICO claims brought pursuant to 18 U.S.C. §§ 1961, 1962, and 1964, *et seq. E.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 467 (1993); *Lou v. Belzberg*, 834 F.2d 730, 741 (9th Cir. 1987). The United States Supreme Court has expressed full faith in the ability of state courts to handle the complexities of civil RICO actions, particularly since many RICO cases involve asserted violations of state law, such as state fraud claims, conspiracy claims, and claims of threats, over which state courts presumably have greater experience. *See Tafflin*, 493 U.S. at 465-66. The state court has jurisdiction over Mamer's RICO claims.

### 2.      The State Court has Jurisdiction Over Mamer's Claim for Declaratory Relief.

Pursuant to NRS 30.030, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." Thus, the state court has jurisdiction over Mamer's request for declaratory relief.

### 3.      The State Court has Jurisdiction Over Mamer's FMLA Claim.

As prescribed in the statute itself, state courts have concurrent jurisdiction over claims alleged under the Family Medical Leave Act. *See* 29 U.S.C. § 2617(a)(2) ("An action to recover the damages or equitable relief prescribed in . . . [this statute] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction.") (emphasis added). Therefore, the state court has jurisdiction over Mamer's FMLA claim.

### 4.      The State Court has Jurisdiction Over Mamer's FLSA Claim.

Like Mamer's RICO and FMLA claims, Mamer's claim under the Fair Labor Standards Act may also be properly adjudicated in the state court action. The FLSA expressly provides that an action "may be maintained . . . in any Federal or State court of competent jurisdiction." 29 U.S.C. §216(b) (emphasis added); *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 694

(2003). Consequently, the state court has jurisdiction over Mamer's FLSA claim.

      **5.**      **The State Court has Jurisdiction Over Mamer's Contract and Tort Claims.**

Mamer suggests in his Second Amended Complaint that this Court has jurisdiction over its contract and tort claims. *See* Doc. # 5 at 1-2. He suggests that this Court has pendent jurisdiction over state law claims. *Id.* While true, the state court also has jurisdiction over the state law claims. Indeed, the state court claims made by Mamer in this federal court action arise out of the transactions and occurrences that are the subject matter of the state-court plaintiffs' claims. According to Rule 13 of the Nevada Rules of Civil Procedure, Mamer "shall state as a counterclaim" any claim that, at the time of serving the state court complaint, Mamer had against the Seenos, WNG, WNG employees, and WNG Management Company. *See supra* § IIIA. The state court has jurisdiction over Mamer's contract and tort claims.

**D.**      **THE VENUE OF THE STATE COURT ACTION IS THE EIGHTH JUDICIAL DISTRICT COURT IN AND FOR THE COUNTY OF CLARK, STATE OF NEVADA.**

Venue is proper in Clark County because Mamer is a defendant in the state court action and is a resident of Clark County, Nevada. *See* Doc. # 5 ¶ 4. NRS 13.040 requires that an action must be commenced and tried in the county in which the defendants, "or any one of them," resides. Also, NRS 13.010(1) requires that a state court action be filed where a contractual obligation is to be performed or in which the person resides. Many of the obligations alleged in the state court action include those arising out of Mamer's employment with WNG, which occurred and were contracted for in Clark County. *See generally* Doc. # 5.

**IV.**      **CONCLUSION**

For the reasons stated, Defendants seek an order from this Court dismissing Mamer's Second Amended Complaint (Doc. # 5) or, in the alternative, staying this action and requiring

/ / /

/ / /

/ / /

/ / /

Robison, Belaustegui,
Sharp & Low
71 Washington St.
Reno, NV 89503
(775) 329-3151

1     Mamer to litigate his claims in the all-inclusive state court action filed in Clark County.

2          DATED this 29th day of October, 2012.

3                                          ROBISON, BELAUSTEGUI, SHARP & LOW
                                           A Professional Corporation
4                                          71 Washington Street
                                           Reno, Nevada 89503
5

6

7                                    By: _____
                                         KENT R. ROBISON
8                                        KRISTEN L. MARTINI
                                         Attorneys for Defendants
9

10                                       IN ASSOCIATION WITH:
                                         JAMES J. PISANELLI - NSB No. 4027
11                                       M. MAGALI WYSONG - NSB No. 11742
                                         PISANELLI BICE, PLLC
12                                       3883 Howard Hughes Parkway, Suite 800
                                         Las Vegas, Nevada 89169
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5, I certify that I am an employee of ROBISON, BELAUSTEGUI, SHARP & LOW, and that on this date I caused to be served a true copy of the **MOTION TO DISMISS SECOND AMENDED COMPLAINT (DOC. #5) OR, IN THE ALTERNATIVE, STAY PROCEEDINGS** on all parties to this action by the method(s) indicated below:

_____ by placing an original or true copy thereof in a sealed envelope, with sufficient postage affixed thereto, in the United States mail at Reno, Nevada, addressed to:

__X__ by using the Court's CM/ECF Electronic Notification System addressed to:

> Bruce R. Mundy, Esq.
> 200 South Virginia Street, 8th Floor
> P.O. Box 18811
> Reno, NV 89511-0811
> E-Mail:      reno-attorney@sbcglobal.net
> Facsimile:    (775) 851-4239
> *Attorney for Plaintiff*
>
> James J. Pisanelli, Esq.
> M. Magali Wysong, Esq.
> PISANELLI BICE, PLLC
> 3883 Howard Hughes Parkway, Suite 800
> Las Vegas, Nevada 89169
> Email: jjp@pisanellibice.com
>        mmw@pisanellibice.com
> Facsimile:    (702) 214-2101
> *Attorneys for Defendants*

_____ by personal delivery/hand delivery addressed to:

_____ by facsimile (fax) addressed to:

_____ by Federal Express/UPS or other overnight delivery addressed to:

DATED:  This 29th day of October, 2012.


V. JAYNE FERRETTO